**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>ANTONIO ROBERTSON,<br>Defendant. | No. 25-CR-99-CJW-MAR<br><br>**ORDER** |

## *I. INTRODUCTION*

A Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge recommending the Court deny defendant's motion to suppress is before the Court. (Doc. 52). Defendant filed an objection to the R&R. (Doc. 60). For the following reasons, defendant's objection is **overruled,** the R&R is **accepted without modification**, and defendant's motion to suppress, (Doc. 41), is **denied**.

## *II. STANDARD OF REVIEW*

When a party files a timely objection to a magistrate judge's R&R, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake [ ] a de novo review of the disputed portions of a magistrate judge's [R&R]"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the

recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's R&R when such review is required. *Lothridge*, 324 F.3d at 600.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (cleaned up) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## *III. DISCUSSION*

### *A. Procedural History*

On June 3, 2026, a grand jury returned a superseding indictment charging defendant with six counts: (1) conspiracy to distribute a controlled substance in violation of Title 21, United States Code, Sections 846 and 851; (2) possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 851; (3) aiding and abetting the distribution of a controlled substance in violation of Title 18, United States Code, Section 2 and Title 21, United States Code, Sections 841(a)(1) and 851; (4) distribution of a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 851; (5) possession of ammunition by a felon (armed career criminal) in violation of Title 18, United States Code, Section

922(g)(1); and (6) possession of a firearm by a felon (armed career criminal) in violation of Title 18, United States Code, Section 922(g)(1). (Doc. 34).

On July 14, 2026, defendant filed a motion to suppress, (Doc. 41), requesting suppression of (1) "[t]he methamphetamine derived from the July 25, 2025, search and seizure of the vehicle the Defendant was driving" and (2) "[t]he firearms and other evidence derived from the December 30, 2025, search of [the residence at] K St. SW." (Doc. 41-1, at 1). In support of his motion, defendant submitted seven exhibits which include two Cedar Rapids Police Department ("CRPD") reports from July 25, 2025 and July 28, 2025, a December 30, 2025 application and search warrant for K Street Southwest, CRPD reports from December 21 and 31, 2025, and a drone video from the search of K Street Southwest. (Docs. 41-2 through 41-9). The government resisted and filed thirteen exhibits in support of its resistance: a July 25, 2025 CRPD report, a Flock camera report for a silver Dodge sedan, a July 26, 2025 CRPD report, videos from the Green Gable Inn, a December 30, 2025 application and search warrant for K Street Southwest, a grand jury testimony transcript from N.H., body camera video from arrest of defendant, and a January 7, 2026 CRPD report. (Docs. 49 through 49-14).[1]

On August 4, 2026, Judge Roberts held a hearing on the motion. (Doc. 50). At the hearing, the government called CRPD Investigator Christopher Brand, Officer Taylor Pfiffner, and Investigator Joshua Bell. (*Id.*). Investigator Brand testified that he first learned of an investigation of defendant related to drug trafficking. (Doc. 51, at 7). He then became aware of a shooting at the Green Gable Inn on December 20, 2025. (Doc. 51, at 13). Investigator Brand identified defendant as the shooter. (*Id.*, at 14, 85). He also identified K Street Southwest to be the residence of defendant's "close acquaintance" or possibly girlfriend, N.H, and where investigators believed defendant was staying part-

[1] Exhibits C and 10 are both search warrants for K Street Southwest. (Docs. 41-4, 41-5, 49-11). Exhibit C is the warrant that defendant is challenging. *See* (Docs. 41, at 1; 51, at 122).

time in December 2025. (*Id.*, at 17, 48–49). Officer Pfiffner performed a traffic stop of defendant on July 25, 2025, and testified that he paced defendant's vehicle traveling at 42 miles per hour in a 35-miles-per-hour zone. (*Id.*, at 63–64). He also observed that the license plate frame on the vehicle covered some of the license plate. (*Id.*, at 67). Investigator Bell was the investigator assigned to follow up on the Green Gable Inn shooting and authored the search warrant at issue here. (*Id.*, at 82–83, 90). He was aware of defendant previously also because of the narcotics investigation. (*Id.*, at 87). He also believed N.H. to be one of defendant's girlfriends and that defendant had been staying with her at K Street Southwest. (*Id.*, at 91). He testified that from "working several of these shooting cases—that after something like this happens, they will—the person will typically run maybe not to their residence but to a girlfriend's house or whatever, hang low, stay low" but keep the firearm on them for protection against retaliation. (*Id.*, at 94–95). On cross examination, however, Investigator Bell admitted that he did not include that information in the search warrant affidavit. (*Id.*, at 98–100).

On September 9, 2026, Judge Roberts issued his R&R, recommending the Court deny defendant's motion to suppress. (Doc. 52). Specifically, Judge Roberts found that the traffic stop of defendant's vehicle on July 25, 2025 was supported by probable cause, or, alternatively, reasonable suspicion; the search warrant for K Street Southwest was supported by probable cause and the requisite nexus between evidence of the shooting at the Green Gable Inn and the residence; and, if not supported by probable cause, that the good faith exception from *United States v. Leon*, 468 U.S. 897 (1984), applied to the search. (*Id.*).

On October 7, 2026, defendant filed an objection to Judge Roberts' R&R, objecting to Judge Roberts' finding that there was a nexus between evidence of the shooting at the Green Gable Inn and K Street Southwest and that the *Leon* good faith exception applies because, according to defendant, the search warrant was so lacking in

indicia of probable cause as to render official belief in its existence entirely unreasonable. (Doc. 60).

The Court has independently reviewed the record and finds no errors in Judge Roberts' detailed and thorough findings of fact; the Court adopts Judge Roberts' factual findings in their entirety.

The Court has also reviewed the record as to defendant's challenge to the July 25, 2025 traffic stop based on his assertion that he was not speeding. (Doc. 41-1, at 3). The Court finds that Judge Roberts did not clearly err on this issue, as, under Iowa law a vehicle speeding can be established through visual estimation or pacing alone. *See State v. Hicks*, 791 N.W.2d 89, 93 (Iowa 2010); *State v. Gentry*, 2019 Iowa App. LEXIS 135, at *1 (Iowa Ct. App. Feb. 6, 2019); *State v. Jerde*, No. 00-0605, 2001 Iowa App. LEXIS 482, at *2 (Iowa Ct. App. July 31, 2001); *State v. Barker*, 901 N.W.2d 838, 839 (Iowa Ct. App. 2017) ("An officer's visual observations, whether as to speed or some other activity that would support a finding of probable cause or reasonable suspicion, may be sufficient to meet the preponderance-of-evidence requirement."); *State v. Konvalinka*, 819 N.W.2d 426, 432 (Iowa Ct. App. 2012) ("this holding is in line with several other jurisdictions that have determined that an officer's visual estimation of speed without any corroborating radar, other mechanical speed detector, or pacing of the vehicle may be sufficient"); *State v. Johnson*, No. 14-0833, 2015 Iowa App. LEXIS 362, at *3 (Iowa Ct. App. Apr. 22, 2015) ("The officer's belief was based upon his specific training and experience in visually determining the speed of vehicles. . . . The officer also noted he needed to 'accelerate rapidly' and drive 'pretty fast' to catch up to the vehicle.").

Judge Roberts found Officer Pfiffner credible, and that Exhibit 4 corroborates his testimony that defendant was traveling above the posted speed limit prior to the July 25, 2025 traffic stop. (Doc. 52, at 21); (Doc. 49-5, at 0:32 (showing officer's vehicle's speed 43 miles per hour)). The Court is not left with the definite and firm conviction

that a mistake has been committed on this issue, and thus **accepts** Judge Roberts' conclusion.

The Court now turns to a de novo review of defendant's remaining issue: his challenge to the warrant for K Street Southwest.

***B. Probable Cause for Search Warrant***

Defendant objects on this issue, arguing that the "search warrant failed to establish a nexus between the evidence to be seized and the place to be searched." (Doc. 60, at 1). Specifically, defendant argues "Investigator Bell's testimony demonstrates the absence of a nexus between the evidence to be seized and the place to be searched." (*Id.*, at 2). Defendant emphasized portions of his cross examination of Investigator Bell at the hearing on defendant's motion in which Investigator Bell admitted that the only actual information to support a belief that defendant had brought a firearm to K Street Southwest was defendant's history of being there. (*Id.*, at 3 (citing (Doc. 51, at 109))).

The Fourth Amendment ensures that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also United States v. Green*, 954 F.3d 1119, 1122 (8th Cir. 2020) ("Under the Fourth Amendment, search warrants must be supported by probable cause."). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks removed) (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curium)); *accord United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) ("If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been

established."). "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984).

More specifically, to be supported by probable cause a warrant must contain "evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In looking for a nexus, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999). Conclusory statements are insufficient to demonstrate that probable cause exists. *United States v. Moore*, No. 25-cr-1036-CJW, 2025 WL 3014225, at *4 (N.D. Iowa Oct. 28, 2025) (citing *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007)). At the same time, "probable cause is about fair probabilities, not near certainties." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (cleaned up). "[A] judge may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . [and] law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000).

In addition to allowing for inferences, "[a]s a reviewing court, we pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit our inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010). "[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Etheridge*, 165 F.3d at 656. Ultimately, "[t]he determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit." *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982).

For searches of a person at a residence, "special Fourth Amendment concerns arise when the persons on the premises are visitors." *Hummel-Jones v. Strope*, 25 F.3d 647, 651–52 (8th Cir. 1994) (reversing a grant of summary judgment based on search of a bag because the bag's owner "was merely patronizing the clinic when the search was executed" and not the subject of the search). Similarly, the Supreme Court has explained that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (finding that the search of a bar patron when the bartender was the subject of the search was impermissible). At the same time, "people who own pistols generally keep them at home or on their persons." *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975); *accord United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011).

The Eighth Circuit has found that when vehicles related to a shooting were registered to owners who lived in different units at the same address and who must have communicated to coordinate arriving and leaving the shooting together, there was the requisite nexus between the warrant and the place to be searched. *United States v. Roberts*, 975 F.3d 709, 714 (8th Cir. 2020); *see also United States v. Cage*, No. 23-cr-334 (MJD/TNL), 2024 WL 1136793, at *10 (D. Minn. Mar. 15, 2024) (finding that defendant's vehicle at a residence leased in his name, even without law enforcement personally observing him there and staff not believing he stayed there for extended periods of time was a sufficient nexus).

Here, the information in the search warrant included a request to search for property relevant and material as evidence in a criminal prosecution or investigation. (Doc. 41-4, at 2). In also included a request to search for property concealed to prevent an offense from being discovered. (*Id.*). In support of that request, Investigator Bell wrote that law enforcement officers conducting surveillance at K Street Southwest,

observed a gray Genesis GV80 parked there, and that the vehicle was rented to defendant. (*Id.*, at 4). On December 2, 2025, law enforcement officers observed defendant entering and exiting K Street Southwest and operating both the Genesis and a Jaguar XJL parked at the residence. (*Id.*). Precision location data from defendant's cell phone placed the cell phone in the area of the residence when officers saw him entering and exiting. (*Id.*). Pen registers linked defendant's cell phone with N.H.'s cell phone; N.H.'s address was K Street Southwest. (*Id.*). N.H. and defendant were in contact via their cell phones 685 times between the first week of November through the last week of December 2025. (*Id.*). N.H. rented a Toyota Rav 4 that defendant was using at the end of December 2025. (*Id.*). Based on his connection with N.H. and his cell phone and his rental vehicle being observed at K Street Southwest, Investigator Bell believed that defendant was at K Street Southwest when Investigator Bell requested the warrant. (*Id.*). In addition, law enforcement officers believed that defendant shot someone at the Green Gable Inn on December 20, 2025. (*Id.*, at 5). Surveillance videos from the Green Gable Inn on that date show defendant arriving and leaving in a Jaguar. (*Id.*). The same Jaguar was parked at K Street Southwest on December 30, 2025. (*Id.*, at 7).

The Court finds, based on the totality of the circumstances, that there was the requisite nexus to establish probable cause to support the challenged warrant. The real question defendant poses is whether there is a fair probability that a person would conceal evidence of a crime—in particular, a firearm—at a residence that they visited frequently, before and immediately after they allegedly were involved in a shooting, parked their one vehicle and two rental vehicles at, contacted via cell phone a resident of 685 times over two months, was the residence of someone with whom they were a "close associate," and where it was likely they were currently located on the date law enforcement requested the search warrant and where the vehicle they drove to and from the shooting was parked. The Court finds that the answer to that question is yes. There is a fair probability that a

person would keep evidence of a crime at their present location, a place they had returned to frequently, parked three different vehicles at, texted at least twelve times a day with a resident of, and presently parked their getaway vehicle at. There is also a fair probability that they would have the firearm with them. Just looking at the four corners of the warrant, there was a reasonable, logical likelihood of finding useful evidence at K Street Southwest because, in particular, despite defendant's changes in vehicles and comings and goings, he appeared consistently at K Street Southwest over multiple weeks both before and after the shooting at the Green Gable Inn.

This case rises beyond the level of *United States v. Powers* because defendant, three vehicles, and his cell phone location were observed firsthand by law enforcement officers at K Street Southwest frequently over a period of weeks. *See United States v. Powers*, 1 F.Supp.3d. 470, 475 (M.D.N.C. 214) (finding an informant's report of seeing a defendant at a residence once on one day insufficient). Even defendant states in his motion that law enforcement had "a suspicion that [d]efendant was living there and storing contraband there." (Doc. 41-1, at 5). It is the consistency and repetition of defendant's presence and property at K Street Southwest that tips the case over into the Court finding a nexus and probable cause. Likewise, it is that the exact vehicle used in connection with the shooting was at K Street Southwest on the date of the warrant. Defendant was not a mere patron at a business, but was rather likely residing at K Street Southwest. *See Hummel-Jones*, 25 F.3d at 651–52; *Ybarra*, 444 U.S. at 91. And, regardless, he was likely to have a firearm on him wherever he was. Thus, the Court **overrules** defendant's objection on this first issue.

### C. Leon *Good Faith Exception*

Defendant also objects on this issue, arguing that the search warrant "affidavit consisted of mere hope that evidence would be found at the residence; its conclusory

allegations did not provide even an indicia of probable cause to justify granting a search warrant." (Doc. 60, at 4).

Under the *Leon* good faith exception, if law enforcement officers' reliance on a warrant was objectively reasonable even if the warrant is later determined to be invalid, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (relying on *Leon*, 468 U.S. 897). The Court has already found that the warrant here was supported by probable cause and the requisite nexus and therefore valid, so the Court need not address the *Leon* good faith exception. This issue is moot. *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) (explaining that an issue is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"). Were the Court to assume, however, the warrant was not supported by probable cause and a nexus to K Street Southwest, the Court would find, like Judge Roberts, that the *Leon* good faith exception would apply, for the reasons Judge Roberts articulated in his R&R. (Doc. 52, at 37-43). Thus, the Court **overrules** defendant's objection on this final issue.

## ***IV. CONCLUSION***

For these reasons, defendant's objection, (Doc. 60), is **overruled**. The Court **accepts** the R&R **without modification**. (Doc. 52). Defendant's Motion to Suppress, (Doc. 41), is **denied**.

**IT IS SO ORDERED** this 20th day of October, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa